EDWARD H. McCORMICK, JR., complainant,

*v.*

E. H. McCORMICK & SONS, incorporated, defendant.

[Decided May 10th, 1923.]

On appeal of the National Leather Company from a decree of the court of chancery reversing receiver's determination as to the validity and lien of a certain mortgage, and in which Vice-Chancellor Foster delivered the following opinion orally:

"I am going to dispose of this matter, and if desired, I will file a formal memorandum in the cause, setting forth my views more in detail than I intend to express them now.

"I am satisfied from the proofs before me that the mortgage held by the bank and Moore and Company is not invalid under the provisions of section 64 of the Corporation act, and the construction placed thereon by the chancellor, when vice-chancellor, in the case of *Cope* v. *Walton, 77 N. J. Eq. 512,* and affirmed in the court of errors and appeals in *79 N. J. Eq. 165.*

"I do not find the evidence to show that the McCormick company was insolvent on the 22d of October, 1920, the time the mortgage in question was given; and while I do find that their business had materially fallen off, that they had very

little, if any, cash, and only about five or six thousand dollars in stock on hand, yet the company owned real estate which they appraised on January 1st, 1919, at $96,000 or more, and appraised in a statement under date of September 1st, 1920, but actually delivered to Mr. Baldwin for the bank on the day in October, 1920, when the mortgage in question was executed, in which statement the value of the real estate is stated to be $225,000, and that this real estate was encumbered by a mortgage of $7,500. It appears from the testimony of Mr. McCormick that this was the valuation he placed upon the property at that time, and, according to his testimony and the statements that I referred to of January 1st, 1919, and of September 1st, 1920, the corporation was indebted to the bank and to Moore and company, and on all other accounts and claims to the extent of $56,469.40; that it claimed assets of $259,007.05, and claimed a total net worth of $202,537.65, and there was nothing in either statement furnished by the representative of the McCormick company to the bank to show or in any way to indicate that the corporation was then insolvent. Furthermore, there is nothing to show that the corporation was insolvent up to the time when the bank began foreclosure proceedings, some time in the latter part of July or 1st of August of this year, which action on the part of the bank induced Mr. McCormick to file the bill in this cause for the appointment of a receiver, in order, as he states, to protect the general creditors of the company. According to Mr. McCormick's statement to the bank and to Moore and Company, the total indebtedness of the corporation outside of what was owing the bank and Moore did not exceed $4,000. He suppressed from the bank and from Moore and Company all knowledge of the claim of the National Leather Company, which has been allowed by the receiver for $50,000, and which originally amounted, or was claimed to amount, to $370,000.

"It is also apparent from the record that while this concern had very little money and very little liquid assets, if any, it still had credit enough and was able to carry on its

business from the date of the mortgage, in October, 1920, up to April or May, 1922, and I use the expression as Mr. Mc-Cormick employs it, in their tanning in the ordinary way or tanning hides on commission for others. It also appears that after the execution of the mortgage as many as twenty-five men were employed as a force in the tannery. During 1920 that force was reduced to about twelve, and, finally, a few months before the bill was filed in this case, some time in the first part of 1922, these twelve men were discharged, and Mr. McCormick and his brothers and some other continued to carry on business until April or May of 1922.

"I find therefore that the company was not insolvent at the time it gave the mortgage in question. I find that if it were, there is absolutely no proof to show that either the representatives of the bank or of Messrs. Moore and Company, or any one representing either or both of them had any knowledge of any such insolvency. I also find that at the time the mortgage was given, the company had not suspended business; that it had and continued to have sufficient credit to carry on its business and to meet its current obligations or more, if not all, of them. It paid interest on its first mortgage of $7,500; it had ample assets to pay all its indebtedness due the bank, due Moore & Company and due all other creditors, but not, of course, to pay in full the claim of the National Leather Company, although it would seem it also had ample assets to do that, if the claim of the National Leather Company had amounted then to only the $50,000 allowed by the receiver.

"The exceptions filed will be sustained and the receiver will have to be reversed in disallowing this mortgage.

"I will put my conclusions in a more formal way if counsel desire, in case you appeal, but I make the announcement of my conclusions now, to put all of you in proper position in connection with the sale of the company's property which is advertised to take place this week."

*Messrs. Lindabury, Depue & Faulks* and *Mr. Josiah Stryker,* for the appellant, National Leather Company.

*Messrs. Pitney, Hardin & Skinner* and *Mr. Corwin Howell,* for James W. Pittenger and National Newark and Essex Banking Company.

*Messrs. Lum, Tamblyn & Colyer,* for George T. James and Edward C. Moore Company.

PER CURIAM.

The decree will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Foster in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TREN-CHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, VAN BUSKIRK—12.

*For reversal*—None.